WESTERN DISTRICT OF LOUISIANA
RECEIVED
SEP 30 2010
TONY R. MOORE, CLERK
BY:

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

IN RE:

Kami H. Dayries,                                                    CASE NO. 10-646

　　Debtor

---

### REPORT AND RECOMMENDATION

---

　　Kami H. Dayies ("Debtor") filed a Motion to Withdraw the Reference from the Bankruptcy Court (the "Motion to Withdraw") with respect to the confirmation of her Chapter 13 plan. The specific confirmation issue raised by the Debtor is her counsel's entitlement to reimbursement of expenses advanced in connection with her bankruptcy case. On August 4, 2010, the District Court referred the Debtor's Motion to me for a Report and Recommendation. The following is my Report and Recommendation to the District Court.

### BACKGROUND

　　Debtor's challenge to the bankruptcy court's treatment of attorney compensation requires some context. Section 330(a)(4)(B) of the Bankruptcy Code provides that the court "may allow reasonable compensation to the debtor's attorney" in a Chapter 13 case "based on a consideration of the benefits and necessity of such services to the debtor and the other factors set forth in this

section." 11 U.S.C. § 330(a)(4)(B). Section 330 does not dictate the process by which a court determines the reasonableness of fees. Bankruptcy courts typically employ a "lodestar" analysis in awarding attorney compensation in bankruptcy. See In re Eliapo, 468 B.R. 592, 598 (9th Cir. 2006) (discussing lodestar analysis under 11 U.S.C. § 330). To receive compensation under section 330, professionals retained under the Code must file a formal fee application with documentation supporting the fee request, and the application must be approved by the court. Because of the large volume of Chapter 13 cases, bankruptcy courts have increasingly streamlined the process for reviewing and awarding attorney compensation by setting presumptively reasonable fees for routine Chapter 13 cases. A debtor's counsel may claim this "no look" fee without a formal application or hearing. If counsel seeks more than the "no look" fee, counsel has the option to file a formal fee application and seek approval of the application by the court. See generally Hon. David S. Kennedy, et al., "Attorney Compensation in Chapter 13 Cases and Related Matters," 13 J. Bankruptcy Law & Practice 6 (2004).

The bankruptcy judges in the Western District of Louisiana have traditionally set "no look" fees in each of their respective divisions. There have been no uniform rules or orders establishing a "no look" fee procedure on a district-wide basis. Consequently, the court's "no look" fee procedure often varied by division. On

November 30, 2009, Judge Stephen Callaway entered two standing orders relating to the award of "no look" fees and the reimbursement of expenses in the Shreveport and Monroe divisions of the Western District.  The first order adopted a "sliding scale" procedure that reduced the applicable $2,800 "no look" fee for attorneys who file a high volume of Chapter 13 cases (the "Sliding Scale Order").  The second order addressed the practice of attorneys who advance the $274 filing fee for a Chapter 13 case and seek reimbursement of those expenses as administrative expenses entitled to priority under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code (the "Expense Reimbursement Order").  The Expense Reimbursement Order precluded attorneys from seeking reimbursement of advanced filing fees on a "no look" basis without filing a formal fee application.  The law firm of McBride & Collier subsequently filed a complaint in the District Court naming Judge Callaway as a defendant in his official capacity and seeking a writ of prohibition barring Judge Callaway from enforcing both of the November 30, 2009 standing orders (the "McBride & Collier Case"). The District Court subsequently denied the requested relief with respect to the Expense Reimbursement Order, but took the challenge to the Sliding Scale Order under advisement.  In denying relief on the Expense Reimbursement Order, the District Court concluded that the provisions on reimbursing filing fees fell within Judge Callaway's discretion under section 330.  See McBride & Collier v.

Stephen Callaway, CV No. 09-1995, Order dated January 25, 2010 (Exhibit F1 to the Motion to Withdraw).

On March 5, 2010, Judges Callaway, Hunter, and Summerhays entered a district-wide standing order establishing a uniform "no look" fee procedure for Chapter 13 cases (the "March 5th Standing Order").[1] The March 5th Standing Order sets a district-wide "no look" fee of $2,800 for services performed through confirmation and 120 days after confirmation. The March 5th Standing Order also provided for additional post-confirmation "no look" fees for certain services performed after the 120-day post-confirmation period. As far as expense reimbursement, the Order provided that the $2,800 "no look" fee included reimbursable expenses, including filing fees that had been advanced by a debtor's counsel. In other words, counsel could not collect the $2,800 "no look" fee **and** seek reimbursement of filing fees over and above $2,800. If debtor's counsel seeks more than $2,800 – whether in fees or expenses – they may opt out of the "no look" fee and file a formal fee application. The March 5th Standing Order does not create a per se bar to reimbursement of filing fees. Finally, the Order rescinded both of Judge Callaway's November 30th standing orders. The District Court subsequently dismissed the McBride & Collier Case on the grounds that the case was moot in light of the March 5th Standing Order.

---

[1] The March 5th Order is Exhibit G to the Motion to Withdraw.

## DISCUSSION

Withdrawal of the reference to the bankruptcy court is governed by 28 U.S.C. § 157(d), which provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Section 157(d) provides for mandatory or permissive withdrawal. A district court must withdraw the reference, upon its own motion or that of any party, where resolution of the proceeding before the bankruptcy court "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Id. A party making a timely motion for mandatory withdrawal must establish that the proceeding involves a "substantial and material" question of both title 11 and non-bankruptcy federal law, and that the non-Code federal law has more than a *de minimis* effect on interstate commerce. In re Anthony Tammarro, 56 B.R. 999, 1007 (D.N.J.1986); In re Rodriguez, 421 B.R. 341, 347-48 (S.D. Tex 2009); see also In re Chateaugay Corp., 86 B.R. 33, 36-37 (S.D.N.Y. 1987); In re Asinelli, Inc., 93 B.R. 433, 434 (M.D.N.C. 1988). Mandatory withdrawal does not apply in the present case because the question presented by the Debtor does not involve a "substantial and material" question of non-bankruptcy law. Rather, counsel to the Debtor seeks a

determination that it is entitled to reimbursement of advanced expenses under section 330 of the Bankruptcy Code. Section 157(d), however, also empowers a district court to grant withdrawal of the reference on permissive grounds "for cause shown." <u>Rodriguez</u>, 421 B.R. at 349. Courts consider the following factors in assessing whether there is cause to withdraw the reference:

1. whether the matter is "core" or "noncore";

2. whether there is a jury demand;

3. whether withdrawal of the reference would "further uniformity in bankruptcy administration";

4. whether withdrawal of the reference would "reduce forum shopping and confusion";

5. whether withdrawal would foster judicial efficiency; and

6. whether withdrawal would delay or expedite the progress of the bankruptcy case.

<u>Levine v. M & A Custom Home Builder & Developer, LLC</u>, 400 B.R. 200, 203 (S.D. Tex. 2008). Of these factors, the second factor – whether there has been a jury demand – does not apply in the present case. The remaining factors weigh against withdrawal of the reference.

### 1. Do "Core" Issues Predominate?

District courts generally deny a motion to withdraw the reference and permit the bankruptcy court to retain jurisdiction "where core issues predominate and the objectives of the Bankruptcy Code will potentially be impaired" by withdrawal. <u>Rodriguez</u>, 421 B.R. at 350. In the present case, counsel's entitlement to the

-6-

reimbursement of expenses under section 330 of the Bankruptcy Code is a core proceeding. "Non-core" proceedings are those proceedings that may be related to a bankruptcy proceeding but in which bankruptcy judges do not have the authority to enter final orders or judgments under the Bankruptcy Code. An example of a "non-core" proceeding is a claim grounded in state law that could be brought outside the context of bankruptcy. See, e.g., Wood v. Wood (In re Wood), 825 F.2d 90, 97-98 (5th Cir. 1987). Conversely, "core" matters invoke "a substantive right provided by title 11 or ... [a claim] that, by its nature, could arise only in the context of a bankruptcy case." Wood, 825 F.2d at 97. Bankruptcy judges are empowered to enter final orders and judgments in core matters. 28 U.S.C. § 157(b). The determination of reasonable attorney compensation in a bankruptcy case is a core matter because it is governed by the Bankruptcy Code, and because the right to compensation under section 330 "by its nature, could arise only in the context of a bankruptcy case." See, e.g., In re Gencor Industries, Inc., 286 B.R. 170, 176 (Bankr.. M.D.Fla. 2002) (award of attorneys fees under section 330 is a core proceeding); In re Campbell, 259 B.R. 615, 618 (Bankr. N.D. Ohio 2001) (same); In re Bressman, 214 B.R. 131, 132 (Bankr. D. N.J. 1997) ("Issues relating to the debtor's retention and compensation of bankruptcy counsel pursuant to §§ 328, 329, 330 and 331 of the Bankruptcy Code are 'core' proceedings as defined by Congress in 28 U.S.C. § 157."); In

re Telemaintenance, Inc., 157 B.R. 352, 354 (Bankr. N.D. Ohio 1993) (review of attorney compensation is a core proceeding). The fact that core issues predominate in this case weighs against withdrawal of the reference. Rodriguez, 421 B.R. at 350; Turner v. Boyle, 425 B.R. 20, 24 (D. Me. 2010) (presence of core issues weighs against withdrawal of the reference) (citing In re Orion Pictures Corp., 4 F.3d 1095, 1101-02 (2d Cir. 1993)).

  2. **Uniformity and Judicial Efficiency**.

  Uniformity and judicial efficiency also weigh against withdrawal of the reference. These factors turn on the extent to which the issue before the court is inherently within the expertise of the bankruptcy court and whether the issue will impact the administration of the instant case and similar cases. See, e.g., Boyle, 425 B.R. at 24 ("[E]fficiency is increased through the bankruptcy court's familiarity with the facts and issues relating to core bankruptcy matters and its expertise will ensure uniform administration of the bankruptcy code.") Awarding fees and expenses to professionals under the Bankruptcy Code – whether by formal application under section 330 or through a "no look" fee procedure – is uniquely within the expertise of the bankruptcy court. Section 330 requires the court to consider multiple factors in determining the reasonableness of attorney compensation, including (1) the time spent on such services, (2) the rates charged, and (3) "whether the services were necessary to the

administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. §330(a)(3).[2] Since the bankruptcy court is often in the best position to assess these factors, bankruptcy courts are afforded wide discretion in awarding compensation under Section 330. See, e.g., In re Clark, 223 F.3d 859 (8th Cir. 2000) ("The bankruptcy court has the broad power and discretion to award or deny attorney fees, and, indeed, a duty to examine them for reasonableness."); In re Lan Associates XI, L.P., 192 F.3d 109, 122 (3rd Cir. 1999) ("In employing the fee setting criteria of Section 330(a), the bankruptcy judge is accorded wide discretion.")

The same considerations of expertise and uniformity also apply to a bankruptcy court's adoption of a uniform "no look" fee

---

[2] 11 U.S.C. § 330(a)(1) provides:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, **the court may award** to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

(emphasis added).

procedure for Chapter 13 cases. Determining a presumptively reasonable fee for Chapter 13 cases requires consideration of many of the same factors that the court would consider in ruling on a formal fee application under section 330 using a lodestar analysis, including local practices, the nature of the services counsel must perform in a typical Chapter 13 case, and the amount of time reasonably required to provide those services. The court also typically considers input from the U.S. Trustee and the standing Chapter 13 trustee. See, e.g., In re Ingersoll, 238 B.R. 202, 209 ("[T]he court strongly suggests that the bankruptcy judges consult with the United States Trustee appointed for the region that includes this district" with respect to "no look" fee procedures). The "no look" fee must also be periodically reviewed to determine whether the fee should be revised. The benefits of a "no look" fee procedure in Chapter 13 cases include uniformity and predictability in fee awards, elimination of the time and expense incurred by counsel in tracking the time spent on each case and in the preparation of fee applications, and the reduction of the administrative burden on the court and the Chapter 13 trustee of reviewing fee applications in every Chapter 13 case. See, e.g., Hon. David S. Kennedy, et al., "Attorney Compensation in Chapter 13 Cases and Related Matters," 13 J. Bankruptcy Law & Practice 6 (2004); Eliapo, 468 F.3d at 599 - 600. In light of these benefits, district and appellate courts have generally approved the use of

"no look" fees in Chapter 13 cases and individual Chapter 7 cases. See, e.g., In re Cahill, 428 F.3d 536, 541 (5th Cir. 2005) ("no look" fee "aids bankruptcy courts in disposing of run-of-the-mill Chapter 13 fee applications expeditiously and uniformly ...."); Eliapo, 468 F.3d at 599 ("We see nothing in § 330 that prevents a bankruptcy court from issuing and then relying on guidelines establishing presumptive fees for routine services in Chapter 13 cases."); In re Kindhart, 160 F.3d 1176 (7th Cir. 1998); In re Kula, 213 B.R. 729, 737 n. 5 (8th Cir. BAP 1997) ("Because the majority of work in most Chapter 13 cases is normal and customary, and because of the sheer volume of such cases in most districts, the lodestar calculation may not necessarily be the best method for determining appropriate fees in those cases."); In re Williams, 357 B.R. 434, 439 n. 3 ("The panel recognizes that this type of standardization, or uniform fee guideline, promotes efficiency by relieving the courts of the administrative burden of reviewing numerous attorney's fee applications; encourages predictability and efficiency for all involved in a chapter 7 or 13 case; and saves time for the court, trustees and the attorneys who represent debtors. The panel also believes that "no look" fees are permissible and should be encouraged in appropriate circumstances.") ; In re Bueno, 248 B.R. 581, 583 (D. Colo. 2000) (same).

In the present case, Debtor's challenge to the March 5th Standing Order is a challenge to a uniform procedure that affects the administration of thousands of Chapter 13 cases, not a narrow question of law that can be decided in isolation from other cases.[3] Specifically, the March 5th Order allows counsel to recover $2,800 for fees and expenses (including filing fees) on a "no look" basis prior to confirmation. The order further provides that counsel can elect to forego the "no look" fee and seek fees and expenses (including filing fees) that exceed the "no look" fee by filing a formal fee application and requesting approval of the fee application by the court under section 330. Debtor's position is that the reimbursement of filing fees is not only mandatory, but that counsel is entitled to recover those expenses ***in addition to*** the "no look" fee without the requirement for a fee application. The case law does not support Debtor's position. Section 330(a)(1) authorizes the reimbursement of "actual and necessary" expenses. However, as with fees, the bankruptcy court has considerable discretion in allowing expense reimbursements. In re Whyche, 425 B.R. 779, 793 (E.D. Va. 2010) (use of the term "may" in 11 U.S.C. § 330(a)(1) expressly authorizes bankruptcy courts to exercise discretion in awarding reimbursement for expenses to debtors' attorneys). The Whyche court went on to explain the rationale for

---

[3] 9,093 Chapter 13 cases were filed in the Western District of Louisiana in 2009.

this discretion and the need to scrutinize expense reimbursements under section 330:

> In these and other instances, it is incumbent upon the Court to remain mindful that the burden to reimburse fees incurred by counsel for a Chapter 13 debtor ultimately falls upon creditors of the bankruptcy estate. "[S]ince every dollar received by the applicant results in one dollar less for the creditors," justification for reimbursement of expenses is an absolute necessity. See Cont'l Ill. Nat'l Bank & Trust Co. v. Wooten (In re Evangeline Refining Co.), 890 F.2d 1312, 1326 (5th Cir. 1989) (citing In re Hotel Assocs., 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981)). The Court's duty to examine expense reimbursement applications derives from the need to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." In re Busy Beaver Bldg. Ctrs., 19 F.3d 833, 844 (3d Cir. 1994).

425 B.R. at 792. There is little case law that specifically addresses the reimbursement of filing fees as opposed to other expenses. At least one court has rejected the reimbursement of filing fees without explanation. In re George Worthington Co., 76 B.R. 605 (Bankr. N.D. Ohio 1987), rev'd on other grounds, 921 F.2d 626 (6th Cir. 1990). Other courts have allowed the reimbursement of filing fees without explanation. See, e.g., In re Muldowney, No. 07-00680S, 2008 WL 513158 (Bankr. N.D. Iowa Feb. 22, 2008). The common thread that runs through these cases, however, is the court's discretion in awarding fees and expenses.

In sum, nothing in section 330 or the case law addressing section 330 and "no look" fees suggests that the procedure set forth in the March 5th Order with respect to reimbursable expenses

falls outside the bankruptcy court's discretion. Indeed, the court could elect to forego a "no look" fee procedure altogether and require that debtors' counsel submit fee applications and seek approval of fees and expenses. Accordingly, uniformity and judicial efficiency weigh in favor of allowing the bankruptcy court to first address Debtor's challenge to the procedures adopted by the bankruptcy court for Chapter 13 cases.

    **3. Forum Shopping and the Question of Impartiality**.

A request to withdraw the reference does not, standing alone, equate to forum shopping. See Rodriguez, 421 B.R. at 353 ("when a movant has been consistent in its position that particular proceedings belong in the district court...there is no support for forum shopping.") Here, however, Debtor's counsel initially proceeded with confirmation and his fee request in the bankruptcy court. Debtor's counsel then filed the instant Motion to Withdraw Reference after Judge Callaway entered a scheduling order establishing briefing deadlines and procedures for litigating plan confirmation and the award of fees and expenses. According to Debtor's counsel, Judge Callaway commented in court that he was a "party" to the fee dispute in the present case because of his role in the ongoing McBride & Collier Case. Seizing on Judge Callaway's comments, Debtor's counsel contends that Judge Callaway has an interest in the outcome of the Dayries case, and that the reference should therefore be withdrawn so that the case can be heard by the

district court.  This argument does not support withdrawal of the reference.

First, Debtor has not shown that Judge Callaway is biased or otherwise interested in the outcome of the <u>Dayries</u> case by virtue of the McBride & Collier Case.  The McBride & Collier Case pertains to two standing orders entered by Judge Callaway that were subsequently rescinded by the March 5th Standing Order.  The present dispute pertains solely to the March 5th Standing Order entered by all three bankruptcy judges in the Western District, and addresses whether Debtor's counsel is entitled to recover advanced filing fees in addition to the "no look" fee.  Judge Callaway is not a "party" to Debtor's case by virtue of the McBride & Collier Case.  There is simply no evidence that Judge Callaway cannot decide this matter "with complete objectivity, fairness, and impartiality."  <u>In re Hargis</u>, 146 B.R. 173, 176 (N.D. Tex. 1992) (denying motion to withdraw reference that was based on allegations that the bankruptcy judge could not fairly and impartially decide the movant's fee request).  Moreover, the question of impartiality is more properly addressed in a motion to recuse directed to Judge Callaway, not a withdrawal of the reference.  If Judge Callaway determines that recusal is warranted, the case can be reassigned to another bankruptcy judge.

### 4. Will Withdrawal of the Reference Expedite or Delay the Underlying Case?

Finally, withdrawal of the reference will delay the progress of the <u>Dayries</u> case. The confirmation of Debtor's plan is taking a back seat to the resolution of this fee dispute. Accordingly, any further delays in resolving this dispute could further delay confirmation of a plan and payments to creditors.

### CONCLUSION

For reasons set forth above, I recommend that the Motion to Withdraw the Reference be denied. The fee question at issue is purely a core matter involving a procedure that effects the administration of fee requests in thousands of Chapter 13 cases. Moreover, denial of the Motion to Withdraw Reference would avoid the danger of forum shopping, and would promote judicial efficiency and the uniform administration of attorney compensation in Chapter 13 cases.

September 22, 2010

_____
Robert Summerhays
Chief U. S. Bankruptcy Judge